1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

10

11    ERLINDO RODRIGUEZ, JR.,

12          Plaintiff,

13      v.

14    MENDOZA, *et al.*,

15          Defendants.

16

Case No.  1:21-cv-00410-JLT-BAM (PC)

FINDINGS AND RECOMMENDATIONS
GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

(ECF No. 44)

**FOURTEEN (14) DAY DEADLINE**

17   **I.**      **Introduction**

18         Plaintiff Erlindo Rodriguez, Jr. ("Plaintiff") is a state prisoner proceeding *pro se* and *in*

19 *forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds

20 against Defendant Mendoza for failure to protect and excessive force in violation of the Eighth

21 Amendment and against Defendant Campbell[1] for excessive force in violation of the Eighth

22 Amendment.

23         Currently before the Court is a motion for summary judgment filed by Defendants

24 Mendoza and Campbell ("Defendants") on the grounds that: (1) there is no genuine dispute of

25 material fact on the merits of Plaintiff's Eighth Amendment failure to protect claim against

26 Defendant Mendoza, and this claim fails as a matter of law; (2) Defendant Mendoza is entitled to

27 qualified immunity as to Plaintiff's Eighth Amendment failure to protect claim; (3) Plaintiff's

28

---

[1] Erroneously sued as "Cambell."

1   Eighth Amendment excessive-force claim against Defendant Mendoza is barred by the favorable

2   termination rule in *Heck v. Humphrey*, 512 U.S. 477 (1994); (4) there is no genuine dispute of

3   material fact on the merits of Plaintiff's Eighth Amendment excessive-force claim against

4   Defendant Campbell, and this claim fails as a matter of law; and (5) Defendant Campbell is

5   entitled to qualified immunity as to Plaintiff's Eighth Amendment excessive-force claim.  (ECF

6   No. 44.)[2]  Following an extension of time, Plaintiff filed an opposition to the motion for summary

7   judgment on May 30, 2023.  (ECF No. 48.)  Defendants filed a reply on June 12, 2023.  (ECF No.

8   51.)  The motion for summary judgment is fully briefed.  Local Rule 230(l).  For the reasons set

9   forth below, the Court recommends that Defendants' motion for summary judgment be granted.[3]

10  **II.    Legal Standards**

11      **A.      Summary Judgment**

12      Summary judgment is appropriate when the pleadings, disclosure materials, discovery,

13  and any affidavits provided establish that "there is no genuine dispute as to any material fact and

14  the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is

15  one that may affect the outcome of the case under the applicable law.  *See Anderson v. Liberty*

16  *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a

17  reasonable [trier of fact] could return a verdict for the nonmoving party."  *Id.*

18      The party seeking summary judgment "always bears the initial responsibility of informing

19  the district court of the basis for its motion, and identifying those portions of the pleadings,

20  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

21  which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v.*

22  *Catrett*, 477 U.S. 317, 323 (1986).  The exact nature of this responsibility, however, varies

23  depending on whether the issue on which summary judgment is sought is one in which the

24  movant or the nonmoving party carries the ultimate burden of proof.  *See Soremekun v. Thrifty*

25  _____

26  [2] Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion for
    summary judgment.  (ECF No. 44-5); *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d

27  952, 957 (9th Cir. 1988); *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988).

28  [3] This motion was dropped inadvertently by the Court's CM/ECF reporting/calendaring system resulting in the
    prolonged delay in resolution.

2

*Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323).  In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.*

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis omitted).  "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard.  *Id.* at 929; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255.  Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties.  Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

### B.    Qualified Immunity

The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (citations omitted).

To determine if an official is entitled to qualified immunity the court uses a two-part inquiry. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The court determines if the facts as alleged state a violation of a constitutional right and if the right is clearly established so that a reasonable official would have known that his conduct was unlawful. *Saucier*, 533 U.S. at 200. A district court is "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. The inquiry as to whether the right was clearly established is "solely a question of law for the judge." *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting *Tortu v. Las Vegas Metro. Police Dep't.*, 556 F.3d 1075, 1085 (9th Cir. 2009)).

It is not required that there be a case directly on point before concluding that the law is clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Stanton*, 571 U.S. at 6 (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). A right is clearly established where it is "sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Hines v. Youseff*, 914 F.3d 1219, 1229 (9th Cir. 2019) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). In determining if the right is clearly established, the court must consider the law, "in light of the specific context of the case, not as a broad general proposition." *Hines*, 914 F.3d at 1229 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam)).

///

4

1

## III.    Discussion

### A.    Defendants' Request for Judicial Notice

Defendants request that the Court take judicial notice of court records from Plaintiff's criminal conviction in Kern County Superior Court, Case No. DF015911A, *People of the State of California v. Erlindo Rodriguez*.  (ECF No. 44-2, Exs. A–C.)  Plaintiff did not respond to the request for judicial notice.

Rule 201(b) of the Federal Rules of Evidence provides that a court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).

Defendants' request for judicial notice is granted.  The Court may take judicial notice of state court records.  *See Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007); *Kasey v. Molybdenum Corp. of Amer.*, 336 F.2d 560, 563 (9th Cir. 1964).

### B.    Undisputed Material Facts ("UMF")[4]

1.  Plaintiff Erlindo Rodriguez, Jr. ("Plaintiff") is a California prison inmate who was incarcerated at Kern Valley State Prison ("KVSP") at the time of the incidents alleged in the Complaint.  (ECF No. 1 ("Compl.").)

2.  Plaintiff was issued a Rules Violation Report ("RVR") on May 7, 2020, about two weeks before the subject incident, for refusing to be double-celled, and found guilty on the violation.  (ECF No. 44-4 ("Pyun Decl."), Ex. A ("Rodriguez Depo.") at 33:23–34:7.)

3.  Plaintiff was issued another RVR on May 13, 2020, about one week before the subject incident, for fighting another inmate that he had been placed in a cell with.  Plaintiff told

---

[4] *See* Defendants' Statement of Undisputed in Support of Defendants' Motion for Summary Judgment.  (ECF No. 44-3.)  Plaintiff did not comply with the rules in preparing his opposition, including by failing to reproduce Defendants' Statement of Undisputed Facts and providing "a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support" of any disputed facts, or providing a statement of disputed facts.  Local Rule 260(b).  As a result, Defendants' Statement of Undisputed Material Facts is accepted except where brought into dispute by Plaintiff's verified complaint and portions of his opposition to the motion for summary judgment signed under penalty of perjury.  *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence); *Johnson v. Meltzer*, 134 F.3d 1393, 1399–1400 (9th Cir. 1998) (same, with respect to verified motions).  Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

1    officers that he was incompatible with that inmate and would fight the inmate before he

2    was placed in the cell.  (*Id.* at 21:24–23:24.)

3    4.   In both the May 13, 2020 incident and the subject incident, Plaintiff did not know the

4         other inmate involved and did not have a specific reason for the purported incompatibility;

5         rather, Plaintiff simply did not want any cellmate at all.  (*Id.* at 35:8–36:13.)

6    5.   On May 21, 2020, before being placed in the cell with Inmate Tran, Plaintiff did not give

7         Defendant Mendoza any reason why he was incompatible with Inmate Tran.  (*Id.* at

8         40:21–23.)

9    6.   After Plaintiff entered the cell with Inmate Tran, for about one and a half minutes they did

10        not fight; during that time Plaintiff repeatedly told Inmate Tran to fight him as Defendant

11        Mendoza stood and watched.  (*Id.* at 45:1–10.)

12   7.   Inmate Tran did not want to fight Plaintiff.  Therefore, he simply raised his foot to keep

13        Plaintiff back.  Plaintiff then punched Tran's foot, grabbed Tran, and then placed him in a

14        headlock.  (*Id.* at 36:19–24.)

15   8.   When Plaintiff put Inmate Tran in a headlock, Defendant Mendoza pepper-sprayed

16        Plaintiff and Tran through the food tray slot in the cell door.  (*Id.* at 36:25–37:3.)

17   9.   Inmate Tran never struck or hit Plaintiff.  (*Id.* at 48:12–17.)

18   10.  Plaintiff had his back to Defendant Mendoza when Defendant Mendoza issued the first

19        burst of pepper spray.  (*Id.* at 36:25–37:3.)

20   11.  After Inmate Tran was put in handcuffs and removed from the cell, Defendant Mendoza

21        pepper-sprayed Plaintiff again and instructed Plaintiff to back up to the cell door to be

22        handcuffed.  (*Id.* at 51:9–14.)

23   12.  As Plaintiff backed up towards Defendant Mendoza, Plaintiff bumped into Defendant

24        Mendoza's pepper spray can, at which time Defendant Mendoza stated that Plaintiff had

25        grabbed his wrist and tried to take the pepper spray can.  (*Id.* at 51:15–20, 58:15–21.)

26   13.  Defendant Mendoza then placed handcuffs on Plaintiff, and Plaintiff was taken to a

27        holding cell.  (*Id.* at 58:21–59:2.)

28   ///

14. On March 8, 2021, a felony Complaint was filed against Plaintiff by the Kern County District Attorney's Office alleging that Plaintiff committed battery against Defendant Mendoza and willfully and unlawfully attempted by means of threats or violence to deter or prevent Defendant Mendoza from performing his duties as an officer, and/or knowingly resisted Defendant Mendoza by the use of force or violence while Defendant Mendoza was in the performance of his duty as an officer.  (ECF No. 44-2 ("Req. for Judicial Notice"), Ex. A ("Felony Compl.").)

15. These criminal charges against Plaintiff arose from the incident involving Plaintiff and Defendant Mendoza on May 21, 2020 that served as the basis of Plaintiff's claims against Defendant Mendoza in this suit.  The charges were based on Defendant Mendoza's claim that Plaintiff assaulted Mendoza by grabbing Mendoza's arm and attempting to take Mendoza's pepper spray can.  (*Id.*; Rodriguez Depo. at 97:16–98:23, 51:15–25.)

16. An aspect of the criminal charges was that the second pepper spray burst was issued in response to Plaintiff grabbing Defendant Mendoza's arm and attempting to take his pepper spray can.  (Req. for Judicial Notice, Ex. C ("Prelim. Hr'g Tr.") at 10:11–12:22.)

17. On November 19, 2021, Plaintiff pled guilty and was convicted of willfully and unlawfully attempting by means of threats or violence to deter or prevent Defendant Mendoza from performing his duties as an officer, and/or knowingly resisting Defendant Mendoza by the use of force or violence while Defendant Mendoza was in the performance of his duty as an officer, in violation of Penal Code § 69.  (Req. for Judicial Notice, Ex. B ("Abstract of J.").)

18. As a result of the conviction, Plaintiff was given a determinate sentence of two years and eight months.  (*Id.*)

19. About an hour after the incident involving Defendant Mendoza, Plaintiff was taken out of his holding cell by two or more officers and escorted to the yard.  (Rodriguez Depo. at 63:17–64:18.)

20. Plaintiff was thrown to the ground, kicked, punched, and choked by the officers until he lost consciousness.  (*Id.* at 66:12–67:15.)

21. Because his vision was compromised from the pepper spray, Plaintiff was unable to see or identify any of the officers who escorted him from the holding cell or who threw him to the ground, kicked, punched, and choked him up to the point that he lost consciousness. (*Id.* at 73:5–24.)

22. Plaintiff does not know how long he was unconscious. (*Id.* at 68:14–69:1.)

23. After he regained consciousness, Plaintiff was picked up and taken to be decontaminated with water; at that time, he was able to see a name tag saying "Campbell" on one of the officers holding him while he was being decontaminated. (*Id.* at 70:24–71:7.)

### C.    Parties' Positions

Defendants contend that Plaintiff's failure to protect claim against Defendant Mendoza fails as a matter of law because at no time was Plaintiff subject to a substantial risk of harm from Inmate Tran and there is no evidence Defendant Mendoza harbored the requisite state of mind to sustain a deliberate indifference claim. Plaintiff was the aggressor, Inmate Tran refused to fight Plaintiff, and Defendant Mendoza ultimately intervened when necessary to protect Tran from Plaintiff. Alternatively, Defendant Mendoza is entitled to qualified immunity as to the failure to protect claim. The favorable termination rule bars Plaintiff's excessive force claim against Defendant Mendoza because a finding in Plaintiff's favor would necessarily imply the invalidity of Plaintiff's criminal conviction and resulting determinate sentence for attempting to grab the pepper spray can out of Defendant Mendoza's hand while Mendoza was performing his lawful duties as an officer. Plaintiff's excessive force claim against Defendant Campbell fails as a matter of law because Plaintiff cannot establish that Defendant Campbell was one of the officers who allegedly threw Plaintiff to the floor and punched, kicked, and choked him. Alternatively, Defendant Campbell is entitled to qualified immunity as to Plaintiff's excessive force claim. Defendants therefore request that the Court grand summary judgment in their favor.

In opposition, Plaintiff disputes that Defendant Mendoza was doing a security check and that he saw Plaintiff and Inmate Tran striking each other. Plaintiff also disputes Defendant Mendoza's statement that he saw Plaintiff turn his attention towards the door and that Plaintiff grabbed Defendant's right wrist and hand area with both hands. Plaintiff disputes these facts and

8

states that Inmate Tran was taken out of the cell, leaving Plaintiff in the cell, Plaintiff was pepper sprayed a second time with no good cause, and then Plaintiff was ordered to back up.  Plaintiff also opposes the summary judgment motion because he knows he was unconscious about 4 seconds, and he is sure it was the same officers saying to him "shut the fuck up," that assaulted him.

In reply, Defendants assert that Plaintiff's opposition fails to comply with Local Rule 260 because it fails to reproduce Defendants' Statement of Undisputed Facts, admitting those facts that are undisputed and denying those facts that are disputed with citations to specific evidence that supports those denials, or to file a Statement of Disputed Facts, citing to relevant evidence supporting any disputed facts and its source.  Defendants argue that Plaintiff's opposition sets forth facts entirely consistent with Defendants' Statement of Undisputed Facts as to his claims against Defendant Mendoza.  Further, Plaintiff's attempt to create a sham disputed fact as to Defendant Campbell contradicts his prior deposition testimony that he did not know how long he was unconscious and that he was unable to identify the officers who had assaulted him before he lost consciousness.  Plaintiff's assertion lacks foundation and Plaintiff does not have personal knowledge as to how long he lost consciousness.  Finally, Plaintiff does not argue against Defendant Mendoza's *Heck* defense, nor does he specifically address any of the arguments for summary judgment based on qualified immunity, thereby conceding these grounds for summary judgment.

### D.    Analysis

#### 1.    Defendant Mendoza – Failure to Protect

Based on the undisputed evidence in the record, Defendant Mendoza was not deliberately indifferent to a substantial risk of harm to Plaintiff when he placed Plaintiff in a cell with Inmate Tran despite Plaintiff telling Mendoza that he was incompatible with and would fight Inmate Tran.  After Plaintiff was placed in the cell with Inmate Tran, Defendant Mendoza stood and watched for about one and a half minutes while Plaintiff talked to Inmate Tran and told him to fight.  UMF 6.  Inmate Tran did not want to fight Plaintiff, and instead raised his foot.  UMF 7.  Plaintiff punched Tran's foot, then grabbed Tran and put him in a headlock.  *Id.*  After Plaintiff

1    put Tran in a headlock, Defendant Mendoza opened the food tray slot in the cell door and issued

2    the first burst of pepper spray.  UMF 8.  Inmate Tran never struck or hit Plaintiff.  UMF 9.

3    Plaintiff further testified during his deposition that Plaintiff told Inmate Tran to tell the officer

4    that they were not compatible cellmates because Plaintiff was going to end up hurting Tran, and

5    he did not want to have to fight Tran.  (Rodriguez Depo. at 38:1–4.)  Inmate Tran agreed and told

6    Defendant Mendoza that he and Plaintiff were not compatible, and Plaintiff threatened his life.

7    (*Id.* at 40:8–11.)  While Plaintiff and Inmate Tran agreed to try not to be celled together, Tran did

8    not agree to fight Plaintiff, and Plaintiff states that he was the aggressor.  (*Id.* at 38:21–39:1.)

9    While Plaintiff "opposes" or disputes certain facts in his opposition, the statements he

10   disputes are based on Defendant Mendoza's testimony during the June 8, 2021 preliminary

11   hearing in Plaintiff's state criminal case.  (Req. for Judicial Notice, Ex. C.)  The specific

12   statements at issue are whether Defendant Mendoza was conducting a security check when he

13   saw Plaintiff and Inmate Tran fighting, and whether Mendoza saw Plaintiff and Tran striking each

14   other.  (ECF No. 48, p. 1.)  Even accepting as true that Defendant Mendoza was not conducting a

15   security check, but instead had just placed Plaintiff in a cell with Inmate Tran, and that Mendoza

16   did not see Plaintiff and Tran striking each other, the remaining undisputed evidence in the record

17   shows that Plaintiff was the aggressor in the fight with Inmate Tran.  UMF 6–9.  Defendant

18   Mendoza's intervention was required to protect Inmate Tran from Plaintiff's attack, and at no

19   point did Plaintiff indicate he was in any danger from Inmate Tran.  Plaintiff only informed

20   Defendant Mendoza that he and Inmate Tran were "incompatible" and that they would fight.

21   UMF 5, 6.  Therefore, the evidence in the record does not support a failure to protect claim by

22   Plaintiff against Defendant Mendoza.

23   Based on the above finding that Plaintiff fails to state a violation of a constitutional right,

24   the Court finds that Defendant Mendoza's argument as to qualified immunity on Plaintiff's failure

25   to protect claim need not be reached.  *Saucier*, 533 U.S. at 200; *Pearson*, 555 U.S. at 236.

26                2.      Defendant Mendoza – Excessive Force

27   "Federal law opens two main avenues to relief on complaints related to imprisonment: a

28   petition for writ of habeas corpus, 28 U.S.C. § 2254, and a complaint under . . . 42 U.S.C.

§ 1983." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam).  "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action." *Id.* (internal citation omitted).  It has long been established that state prisoners cannot challenge the fact or duration of their confinement in a section 1983 action and their sole remedy lies in habeas corpus relief.  *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005).  Often referred to as the favorable termination rule or the *Heck* bar, this exception to section 1983's otherwise broad scope applies whenever state prisoners "seek to invalidate the duration of their confinement—either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Wilkinson*, 544 U.S. at 81; *Heck v. Humphrey*, 512 U.S. 477, 482, 486–87 (1994); *Edwards v. Balisok*, 520 U.S. 641, 644 (1997).

Plaintiff does not explicitly oppose Defendants' argument that the excessive force claim against Defendant Mendoza is *Heck*-barred, although he disputes that he turned towards the cell door and grabbed Defendant Mendoza's wrist.  (ECF No. 48, p. 1.)  However, it remains undisputed that Plaintiff received a criminal conviction, resulting in a determinate sentence of two years and eight months, for attempting to grab the pepper spray can out of Defendant Mendoza's hand while Mendoza was performing his lawful duties as an officer.  Plaintiff has not claimed that this conviction was overturned or his sentence vacated, and instead argues that he did not grab Defendant Mendoza's wrist, and therefore that Defendant Mendoza pepper sprayed Plaintiff a second time for no reason.  Accepting Plaintiff's version of the facts—that Plaintiff did not grab Defendant Mendoza's wrist or attempt to take the pepper spray can, such that Defendant Mendoza's second pepper spray burst was for no reason—would necessarily imply the invalidity of Plaintiff's criminal conviction for the opposite version of events.  This result would affect the duration of Plaintiff's sentence, and therefore, Plaintiff's excessive force claim against Defendant Mendoza is *Heck*-barred.

///

///

11

1

3.       Defendant Campbell – Excessive Force

2       Plaintiff states for the first time in his opposition that he knows he was unconscious for

3   about 4 seconds, and he is sure that the same officers who told him "shut the fuck up" were the

4   same officers who assaulted him.  (ECF No. 48, p. 1.)  Although not explicit, it appears Plaintiff

5   now asserts that he is sure that Defendant Campbell is one of the officers who assaulted him,

6   because Plaintiff was only unconscious for 4 seconds before he regained consciousness and saw

7   Campbell's nametag.

8       Plaintiff provides no corroborating evidence for his assertion that he was only

9   unconscious for 4 seconds, despite testifying during his deposition that he did not know how

10   much time passed while he was unconscious.  UMF 22.  As Plaintiff testified under penalty of

11   perjury that he was unconscious, the identification of Defendant Campbell cannot be based on his

12   personal knowledge, and Plaintiff has provided no other method by which he could have

13   discovered how much time passed (such as looking at a clock, or conferring with an individual

14   who witnessed the events).  Plaintiff's statement is therefore insufficient to create a dispute of

15   fact.  *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1063 (9th Cir. 2012) ("Declarations

16   must be made with personal knowledge; declarations not based on personal knowledge are

17   inadmissible and cannot raise a genuine issue of material fact.") (citing *Skillsky v. Lucky Store,*

18   *Inc.*, 893 F.2d 1088, 1091 (9th Cir. 1990) and Fed. R. Civ. P. 56(c)(4)); *Rivera v. AMTRAK*, 331

19   F.3d 1074, 1078 (9th Cir. 2003) ("Conclusory allegations unsupported by factual data cannot

20   defeat summary judgment."); *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th

21   Cir. 1997), as amended (Apr. 11, 1997) ("A conclusory, self-serving affidavit, lacking detailed

22   facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

23       Accordingly, based on the undisputed facts, Plaintiff has failed to show an actual

24   connection between Defendant Campbell's actions—helping to decontaminate Plaintiff with

25   water after his pepper spray exposure after Plaintiff regained consciousness—and the alleged

26   violation of Plaintiff's rights—the use of force prior to Plaintiff's loss of consciousness.  UMF

27   20–23.  Such a connection is required by section 1983.  *See Johnson v. Duffy*, 588 F.2d 740, 743

28   (9th Cir. 1978) ("A person 'subjects another to the deprivation of a constitutional right, within the

12

meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.").  Plaintiff's claim of excessive force against Defendant Campbell therefore fails as a matter of law.

Based on the above finding that Plaintiff fails to state a violation of a constitutional right, the Court finds that Defendant Campbell's argument as to qualified immunity on Plaintiff's excessive force claim need not be reached.  *Saucier*, 533 U.S. at 200; *Pearson*, 555 U.S. at 236.

**IV.     Conclusion and Recommendation**

For the reasons explained above, the Court finds that Defendants Mendoza and Campbell are entitled to summary judgment.

Accordingly, IT IS HEREBY RECOMMENDED that Defendants' motion for summary judgment, (ECF No. 44), be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 30, 2024**          ____/s/ *Barbara A. McAuliffe*_____
                                       UNITED STATES MAGISTRATE JUDGE